IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | | |
|---|---|---|
| SHERRY ANN BOWMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No: 1:17-cv-01130-STA-egb |
| | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER AFFIRMING THE DECISION OF THE COMMISSIONER**

Plaintiff Sherry Ann Bowman filed this action to obtain judicial review of Defendant Commissioner's final decision denying her application for disability benefits under Title II and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). Plaintiff's applications were denied initially and upon reconsideration by the Social Security Administration. Plaintiff then requested a hearing before an administrative law judge ("ALJ"), which was held on January 27, 2016. On March 1, 2016, the ALJ denied the claim. The Appeals Council subsequently denied the request for review. Thus, the decision of the ALJ became the Commissioner's final decision. For the reasons set forth below, the decision of the Commissioner is **AFFIRMED**.

Under 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which he was a party. "The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's review is limited to determining

whether there is substantial evidence to support the Commissioner's decision and whether the correct legal standards were applied. *See Blakley v. Comm'r Of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389 (1971)). It is "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Comm'r of Soc. Sec.*, 105 F.3d 244, 245 (6th Cir. 1996) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The Commissioner, not the Court, is charged with the duty to weigh the evidence, to make credibility determinations[1] and resolve material conflicts in the testimony and to decide the case accordingly. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997); *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990). When substantial evidence supports the Commissioner's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

Plaintiff was born on February 4, 1962. She has a GED. She claims disability beginning January 31, 2013, from left shoulder injury status post-surgery, depression, anxiety, skin cancer, and high blood pressure.

The ALJ made the following findings: (1) Plaintiff has not engaged in substantial gainful activity since the alleged onset date and met the insured status requirements of the Act through

---

[1] The SSA published Social Security Ruling 16-3p, Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims, which supersedes SSR 96-7p, Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements. SSR 16-3p eliminates use of the term "credibility" from SSA policy and clarifies that subjective symptom evaluation is not an examination of a claimant's character. *See* SSR 16-3p, 2016 WL 1119029 *1 (March 16, 2016). SSR 16-3p took effect on March 16, 2016, after the ALJ issued his decision and, therefore, is not applicable to the decision in this case.

the date of this decision; (2) Plaintiff has severe impairments of left shoulder injury status post-surgery and depression; but she does not have an impairment or combination of impairments that meet or medically equal one of the listed impairments; (3) Plaintiff retains the residual functional capacity to perform medium level work except for avoiding overhead work with the non-dominant left upper extremity; performing only simple routine tasks; and having only occasional interpersonal contact with co-workers, the public, and supervisors; (4) Plaintiff is able to perform her past relevant work or, alternatively, there are other jobs that exist in significant numbers in the national economy that she can perform; (5) Plaintiff was not under a disability as defined in the Act at any time through the date of this decision. R. 16 – 38.

The Social Security Act defines disability as the inability to engage in substantial gainful activity. 42 U.S.C. § 423(d)(1). The claimant bears the ultimate burden of establishing an entitlement to benefits. *Born v. Sec'y of Health & Human Servs*, 923 F.2d 1168, 1173 (6th Cir. 1990). The initial burden of going forward is on the claimant to show that he or she is disabled from engaging in his or her former employment; the burden of going forward then shifts to the Commissioner to demonstrate the existence of available employment compatible with the claimant's disability and background. *Id.*

The Commissioner conducts the following, five-step analysis to determine if an individual is disabled within the meaning of the Act:

    1. An individual who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.

    2. An individual who does not have a severe impairment will not be found to be disabled.

    3. A finding of disability will be made without consideration of vocational factors, if an individual is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the regulations.

4. An individual who can perform work that he or she has done in the past will not be found to be disabled.

5. If an individual cannot perform his or her past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

*Willbanks v. Sec'y of Health & Human Servs*, 847 F.2d 301 (6th Cir. 1988).

Further review is not necessary if it is determined that an individual is not disabled at any point in this sequential analysis. 20 C.F.R. § 404.1520(a). Here, the sequential analysis proceeded to the fourth step with a finding that Plaintiff can perform her past relevant work.[2]

Plaintiff argues that substantial evidence does not support the ALJ's decision. She specifically argues that the ALJ's residual functional assessment that she retains the mental ability to perform work is not supported by substantial evidence and that the ALJ improperly weighed the medical evidence. Plaintiff's arguments are not persuasive.

Medical opinions are to be weighed by the process set forth in 20 C.F.R. § 404.1527(c). Under the treating physician rule, an ALJ must give controlling weight to the opinion of a claimant's treating physician if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(c)(2). The term "not inconsistent" is meant to convey that "a well-supported treating source medical opinion need not be supported directly by all of the other evidence, (i.e., it does not have to be consistent with all the other evidence) as long as there is no other substantial evidence in the case record that contradicts or conflicts with the opinion." Soc. Sec. Rul. 96–2P.

---

[2] The ALJ made an alternative step five finding that Plaintiff could also perform other work that exists in significant numbers in the national economy.

If an ALJ decides that the opinion of a treating source should not be given controlling weight, the ALJ must take certain factors into consideration when determining how much weight to give the opinion, including "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Any decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Rul. 96–2P; *see also Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013).[3]

Generally, an opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination, 20 C.F.R. § 404.1502, 404.1527(c)(1), and an opinion from a medical source who regularly treats the claimant is afforded more weight than that from a source who has examined the claimant but does not have an ongoing treatment relationship. *Id.* § 404.1502, 404.1527(c)(2). In other words, "[t]he regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker." Soc. Sec. Rul. No. 96–6p. Opinions from nontreating sources are not assessed for "controlling weight." Instead, these opinions are weighed based on specialization, consistency, supportability, and any other factors

---

[3] SSA has altered the regulations pertaining to the consideration of medical evidence. *See* 82 Fed. Reg. 15,132 (Mar. 27, 2017) (amending and correcting the final rules published at 82 Fed. Reg. 5,844 (Jan. 18, 2017)). Pursuant to these regulatory changes, SSA also rescinded Soc. Sec. Rul. 96-2p effective March 27, 2017, which is after the date of the ALJ's decision in this case. *See* 82 Fed. Reg. 16,869 (April 6, 2017) (clarifying effective date of rescission notice published at 82 Fed. Reg. 15,263 (March 27, 2017)).

5

"which tend to support or contradict the opinion" may be considered in assessing any type of medical opinion. 20 C.F.R. § 404.1527(c). State agency consultants are highly qualified specialists who are also experts in the Social Security disability programs, and their opinions may be entitled to great weight if the evidence supports their opinions. *See* 20 C.F.R. § 404.1527(e)(2)(i); Soc. Sec. Rul. 96-6p.

In the present case, substantial evidence supports the weight that the ALJ gave to the medical evidence and opinions in the record and his evaluation of Plaintiff's residual functional capacity, both physical and mental. The ALJ properly determined that Plaintiff could perform a limited range of medium work.

Cognitively, the ALJ limited Plaintiff to performing simple routine tasks and having only occasional interpersonal contact with co-workers, the public, and supervisors. In making this determination, the ALJ looked at the medical evidence and noted that Plaintiff had received little mental health treatment. Plaintiff was diagnosed with depression by Patricia Crane-Bryson, M.D., on March 24, 2014. R. 344-45. This was the first time as reflected by the record that Plaintiff complained of depression and, after that, her condition was controlled by medication. R. 344. Plaintiff testified that she had not gone to mental health treatment because, when she called the mental health center if she was "having a bad day," she was "fine the next day." R. 47. She reported that she had run out of her medication and just needed it to be refilled. *Id.* Furthermore, she denied that she was depressed to consultative examiner, Dennis Wilson, Ph.D. R. 319. Plaintiff's failure to seek regular mental health treatment and her improvement with medication undermine her allegations of disability due to mental health impairments. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009) ("A "reasonable mind" might therefore find that

the lack of treatment during the pre-November 4, 2002 time frame indicated an alleviation of White's symptoms.").

Plaintiff reported that she had sleeping difficulties due to depression but, when she complained to Daniel Davis, M.D., about sleep problems, he advised that she stopped drinking so many caffeinated beverages. R. 329, 333. Her doctor's advice for modest treatment indicates that Plaintiff's symptoms are not disabling. *See Blaim v. Comm'r of Soc. Sec.*, 595 F. App'x 496, 499 (6th Cir. 2014) ("[The] mildness of Blaim's treatment - mostly pain medication, weight loss, and exercise - suggested that his ailments were comparatively mild.").

Plaintiff argues that the ALJ erred in giving little weight to Dr. Wilson's opinion that she had marked limitations in her cognitive work abilities. According to Plaintiff, the ALJ erroneously rejected the assessment of Dr. Wilson on the ground that she did not advise him that she performed quality control and customer service work when she worked for the Johnson Controls Company. R. 51, 321-23. She contends that the ALJ erred in failing to discuss why her performing quality control work for Johnson Controls would invalidate Dr. Wilson's opinion.

Contrary to Plaintiff's argument, the ALJ noted that Dr. Wilson diagnosed Plaintiff with borderline intellectual functioning and opined that Plaintiff had functioned in this range all of her life. However, Dr. Wilson was not aware of Plaintiff's skilled work in customer service and quality control when he rendered his opinion. R. 319, 321. Plaintiff testified that she worked in quality control and customer service for Johnson Controls. R. 51. As part of her work, she traveled to other states to attend to problems reported by the businesses that bought her employer's products. *Id.*

The ALJ could properly give less weight to Dr. Wilson's findings of borderline intellectual functioning or intellectual disability as Plaintiff's work activity and other abilities

7

indicated that she did not function at the intellectual disability or borderline range.[4] *See Miller v. Comm'r of Soc. Sec.*, 524 F. App'x 191, 194 (6th Cir. 2013) (determining that the assessment that Miller was markedly limited in mental functioning conflicted with Miller's treatment records and other evidence demonstrating that he was able to engage in significant daily activities and that he was able to maintain part-time employment for an extended period of time.); *see also West v. Comm'r of Soc. Sec.*, 2007 WL 1991059 *5 (6th Cir. 2007) (finding that a diagnosis of mental retardation may be considered invalid if it is inconsistent with Plaintiff's work history or level of functioning).

Additionally, Plaintiff's treating providers did not diagnose her with ADHD, borderline intellectual functioning, or intellectual disability. R. 302, 329 - 345. And, testing administered by David Pickering, Ph.D., another consultative examiner, militated against Dr. Wilson's finding that Plaintiff had a possible intellectual disability. R. 321. Dr. Pickering administered the Wechsler Individual Achievement Test – Second Edition (WIAT-II) to Plaintiff, who achieved a Verbal IQ of 91, a Performance IQ of 76, and a Full Scale IQ of 81. R. 355. Thus, it was not error for the ALJ not to find that Plaintiff was limited to the degree opined by Dr. Wilson.

The ALJ gave little weight to Dr. Pickering's opinion that Plaintiff had a generalized anxiety disorder and noted that Dr. Pickering was the only one to make this diagnosis. R. 321, 357. Plaintiff sought little, if any, treatment for anxiety since her alleged onset date of January 31, 2013. R. 302, 329 - 345. The ALJ further noted that Dr. Pickering's diagnosis of a recurrent, severe major depressive disorder was not supported by Plaintiff's failure to seek regular treatment for the condition, but, instead, she merely had her medication prescription refilled.

---

[4] Likewise, Plaintiff asserts that the ALJ erroneously gave little weight to the assessment of Dr. Pickering because she did not specifically disclose to him that as part of her work at Johnson Controls she performed quality assurance work. The Court rejects this argument for the same reason that it rejects the argument made as to Dr. Wilson.

Accordingly, while Plaintiff suffered from depression, the ALJ found that Dr. Pickering's characterization of it was not supported by the record.

Finally, the findings of Dorothy Tucker, Ph.D., and Rebecca Joslin, Ph.D., state agency psychological consultants, supported the ALJ's determination that Plaintiff had the cognitive ability to perform work activities. R. 78, 107. These doctors found that Plaintiff could understand and remember simple and low-level detailed tasks; her pace and persistence were limited but she could sustain concentration and persistence for simple tasks with customary breaks; she could interact infrequently with supervisors, coworkers, and the public; and she could set goals and adapt to infrequent change. R. 78, 107. The ALJ gave less weight to their opinions regarding Plaintiff's ability to sustain concentration, persistence, and pace because the opinions lacked specificity and because Plaintiff did not complain of memory loss or concentration difficulties to her doctors. The Court finds that the ALJ could properly rely on the opinions from the consulting doctors together with the other evidence of record. *See Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015) (noting that an ALJ may give substantial weight to the opinions of state agency physicians when these opinions are supported by the record as a whole).

Substantial evidence supports the ALJ's finding that the lack of objective evidence to support Plaintiff's complaints, her improvement with medication, her failure to seek regular mental health treatment, discrepancies in the evidence, and the medical opinion evidence were inconsistent with Plaintiff's allegations of disability due to her mental and cognitive abilities. Accordingly, substantial evidence supports the ALJ's weighing of the medical evidence.

Physically, the ALJ concluded that Plaintiff was capable of performing medium work activity as defined in 20 C.F.R. § 404.1567(c) and § 416.967(c) except she must avoid overhead

work with her non-dominant left upper extremity. Plaintiff has not argued that this conclusion was in error. Accordingly, the Court finds that the ALJ did not err in making this finding.

The ALJ found that, at step four, Plaintiff was able to perform her past relevant work, either as the work was performed or as it was performed in the national economy. The ALJ based his finding, in part, on the testimony of a vocational expert. The ALJ asked the vocational expert a hypothetical question regarding an individual of Plaintiff's age, education, work experience, and residual functional capacity. The vocational expert responded that such an individual could return to Plaintiff's past relevant work as an assembler as the work was actually and generally performed. R. 54. The ALJ may use vocational expert testimony at step four of the sequential evaluation to assist in determining whether an individual can perform his or her past relevant work. *See Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007) ("The regulations permit an ALJ to use the services of a vocational expert at step four to determine whether a claimant can do his past relevant work, given his RFC.").

Alternatively, the vocational expert testified that an individual of Plaintiff's age, education, work experience, and residual functional capacity could perform the jobs of hand packager, production assembler, and material mover and that these jobs exist in significant numbers in the national economy. R. 54-55. As the hypothetical question to the vocational expert included those impairments the ALJ found credible and excluded those he discredited for legally sufficient reasons, the vocational expert's testimony that Plaintiff could perform work existing in significant numbers in the national economy constituted substantial evidence in support of the ALJ's determination. *See Winslow v. Comm'r of Soc. Sec.*, 566 F. App'x 418, 421 (6th Cir. 2014) ("The record reflects, however, that the hypothetical questions were proper because the ALJ incorporated all of the functional limitations that she deemed credible.").

Substantial evidence supports the ALJ's determination that Plaintiff was not disabled, and the decision of the Commissioner is **AFFIRMED**.

**IT IS SO ORDERED.**

                                           **s/ S. Thomas Anderson**
                                           S. THOMAS ANDERSON
                                           CHIEF UNITED STATES DISTRICT JUDGE

Date:    February 5, 2019.